# IN THE COURT OF APPEALS OF IOWA

No. 20-0782
Filed May 12, 2021

**JOSE MORALES,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.

_____

      Appeal from the Iowa District Court for Marshall County, James C. Ellefson, Judge.

      Jose Morales appeals the district court's denial of his postconviction-relief application. **AFFIRMED.**

      Jesse A. Macro, Jr. of Macro & Kozlowski, LLP, West Des Moines, for appellant.

      Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee State.

      Considered by Vaitheswaran, P.J., Schumacher, J., and Scott, S.J.*

      *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**VAITHESWARAN, Presiding Judge.**

A jury found Jose Morales guilty of second-degree murder in connection with the shooting of an acquaintance in Marshalltown, Iowa. *See* Iowa Code §§ 707.1 and 707.3 (2013). The court of appeals affirmed his judgment and sentence. *See State v. Morales*, No. 15-1053, 2016 WL 2746169, at *1 (Iowa Ct. App. May 11, 2016).

Morales filed a postconviction-relief application. The district court denied the application following an evidentiary hearing.

On appeal, Morales argues his trial attorney was ineffective in failing to (1) object to a portion of the prosecutor's opening statement; (2) object "to several instances of hearsay"; (3) "investigate the statements of" a person who identified someone else as the shooter; and (4) retain a jury instruction on voluntary manslaughter. He also argues the postconviction court "erred in not considering cumulative prejudice."

With respect to the ineffective-assistance-of-counsel claims, Morales must show (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "We deny an ineffective-assistance claim if the defendant fails to show either prong." *State v. Boothby*, 951 N.W.2d 859, 863 (Iowa 2020) (citation omitted).

## I.    Prosecutor's Opening Statement

Before trial, the defense filed a motion in limine, seeking the exclusion of various pieces of evidence. Paragraph 7 of the motion sought to prevent the State from referencing Morales' prior bad acts, including "drug use/sales." At a hearing on the motion, the prosecutor informed the court the State would not be "getting

into any . . . inadmissible evidence of . . . drug sales or use." The district court ruled that the "items discussed in paragraph 7 [would] not be mentioned in jury selection and opening argument . . . until such time as the State or Defendant [] alerted the Court of its intention to do so and obtained an appropriate ruling from the Court." It is unclear from the record whether the parties had any further discussions about the order in advance of opening statements.

During the State's opening statement, the prosecutor told the jury Morales "had a beef with" Dedrikk, the person who was shot. The prosecutor then said:

> These two were involved in some shady dealings. These two ran with a rough crowd. These two lived on the run with a bunch of other kids about their age. They were around drugs. Sometimes they sold drugs. They often used drugs, marijuana, methamphetamine; and they tried to stay clear of the police at all times.

Morales contends his attorneys should have objected to these statements as unsupported by the record and in violation of Iowa Rule of Evidence 5.404(b), governing the admission of character evidence. We elect to resolve the issue on the *Strickland* prejudice prong. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. *Strickland* prejudice may not be shown where evidence of a defendant's guilt is "overwhelming." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 872 (Iowa 2019); *see also State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020).

The court of appeals characterized the evidence of Morales' guilt as overwhelming, albeit in a different context. *See Morales*, 2016 WL 2746169, at *1 (reviewing the denial of a new-trial motion on the ground that the verdict was

contrary to the evidence). On our de novo review of the record, we agree with the characterization.

A young woman testified she and her boyfriend picked up Morales and dropped him off at an apartment. Morales went inside for about five to ten minutes while they waited in the car. He came out with two other people. The young woman then heard "a popping noise." She looked back and saw Morales run.

The young woman's boyfriend at the time similarly testified he heard "[l]ike a pop" and "everybody just, like, split." In his words, Morales "ran." Surveillance video near the apartment captured a person "with the same clothing" as Morales.

Richard, a friend of Morales and Dedrikk, testified the two did not like each other. After Morales arrived at the house, Richard tried to prevent an altercation by steering the two to the porch. Momentarily, Richard overheard Dedrikk asking Morales, "What are you going to do about it?" Morales "[p]ulled out a gun and shot him." Richard identified the gun Morales used as a ".22 snub revolver."[1]

Another longtime friend of Morales testified Morales told him he "dropped" a gun behind a store in Marshalltown. The friend went there, found the gun "between two different air conditioners," and picked it up. He took the gun to his father's apartment in Nevada, Iowa, covered it, and "put it in a pan" under the sink. The gun was recovered from the apartment. It was a 22-caliber revolver.[2]

---

[1] The State and the defense elicited testimony that Richard used drugs—specifically methamphetamine—an hour before Morales showed up. Richard said nothing about whether Morales used or sold drugs that evening.

[2] This witness admitted he used marijuana and methamphetamine and admitted he was "[c]oming off a lot of drugs" when police interviewed him. He did not testify that Morales used or sold drugs.

A Marshalltown patrol officer arrived at the apartment where the shooting occurred and administered CPR to Dedrikk until an ambulance arrived. Dedrikk died at the hospital. An associate medical examiner who performed the autopsy on Dedrikk testified there was one gunshot entry wound into his chest, which "went through the right ventricle of the heart" and "then exited the heart and entered the left lung." She opined "[t]he cause of death was gunshot wound to the chest." A State criminalist testified the muzzle of the pistol "was somewhere between 18 inches and 30 inches from the jacket at the time it was fired."

One of the lead detectives was allowed to testify about the contents of a Facebook message from Morales to his mother. Although a printout of the text was excluded from evidence for lack of foundation, the detective testified the message said, "'Game over. I wish I would have been a better son' or something like that."

Given the overwhelming evidence of guilt, we conclude there is no reasonable probability of a different outcome had defense counsel objected to the portion of the prosecutor's opening statement concerning drug use and sales. We affirm the postconviction court's denial of this ineffective-assistance-of-counsel claim.

## II.    *Hearsay*

Morales takes issue with a police captain's narrative about the Facebook post summarized above. He notes the captain "was allowed to testify about the contents of the message even through three levels of hearsay, and his testimony was not objected to by trial counsel." The State counters that "the Facebook message was introduced by a second witness"—the detective quoted above—and

because "the message was properly admitted through [that] [d]etective . . . there is no resulting prejudice."

To be clear, the actual Facebook post was not admitted. And, as the district court stated, the captain's "testimony was certainly hearsay." But Morales cannot establish *Strickland* prejudice. *See Boothby*, 951 N.W.2d at 865. First, the captain's testimony was essentially duplicative of the detective's testimony. *See State v. McNeal*, 897 N.W.2d 697, 708–09 (Iowa 2017). Second, as discussed above, the evidence of guilt was overwhelming. *See State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019).

We conclude there was no reasonable probability of a different outcome had counsel objected to the captain's testimony. We affirm the postconviction court's denial of this ineffective-assistance-of-counsel claim.

### III.    *Failure to Investigate*

Morales argues his trial attorneys were ineffective in failing to "investigate the statements of" a third party potentially implicating someone else as the shooter. Those statements appeared in a pretrial deposition of a detective taken by one of the defense attorneys.

Both of Morales' trial attorneys testified at the postconviction-relief hearing. Both highlighted the damage the third party could have inflicted if called as a witness. One recalled the third party "made statements . . . giving motivation for Mr. Morales to so something violent." The attorney said, "[I]n my position, I don't want to bring in testimony of a person who gives a motive for my client's actions." The other attorney similarly stated, "[T]he harm that could have been brought forth" by calling the witness "would have outweighed any sort of benefit."

On our de novo review of the record, including the deposition transcript, we conclude Morales' attorneys exercised reasonable trial strategy in declining to further investigate the third party or call the third-party as a witness. *See State v. Heuser*, 661 N.W.2d 157, 166 (Iowa 2003) ("Generally the decision not to call a particular witness . . . to testify implicates a reasonable tactical decision." (quoting *State v. Polly*, 657 N.W.2d 462, 468 (Iowa 2003))). Accordingly, we affirm the postconviction court's denial of this ineffective-assistance-of-counsel claim.

## IV. *Voluntary Manslaughter Jury Instruction*

Morales contends his trial attorneys should have involved him "in the discussion of keeping a manslaughter jury instruction." He concedes "it may be a strategic decision to have that instruction removed because it did not fit a theory of the case" but asserts counsel still had "a duty to keep the client informed at each stage of the proceeding."[3]

"Iowa Rule of Criminal Procedure 2.6(3) requires the trial court to instruct on lesser-included offenses, 'even though such instructions have not been requested.'" *State v. Spates*, 779 N.W.2d 770, 773 (Iowa 2010) (citation omitted). "[A] defendant may expressly waive a lesser-included offense instruction." *Id.* at 774.

---

[3] One of Morales' attorneys testified that by including the instruction, "you're almost telling the jury that you're willing to concede that he did shoot him. And that was not one of our theor[ies] and [we] did not want that to go in front of the jury." He also did not recall that there was evidence of voluntary manslaughter, which requires a finding of serious provocation. *See* Iowa Code § 707.4(1). Morales does not argue that counsel's rationale for excluding the voluntary manslaughter instruction was unreasonable.

The State included voluntary and involuntary manslaughter instructions in its proposed jury instructions. During the brief jury instruction conference, defense counsel noted that "a couple" of the instructions "were removed." The voluntary manslaughter instruction was one of them. Morales was present during this discussion.

At the postconviction-relief hearing, one of Morales' trial attorneys was asked whether a decision to include or exclude an instruction would be explained to a defendant. Counsel responded, "Yes. Because it's . . . pretty cerebral stuff that you need to kind of explain." Morales testified he "was not" informed of the reason the voluntary manslaughter instruction "was taken out."

Even if Morales' testimony is accepted, he cannot establish *Strickland* prejudice because, as discussed, the evidence of guilt was overwhelming. *See State v. Pendleton*, No. 15-1115, 2016 WL 4384653, at *3–4 (Iowa Ct. App. Aug. 17, 2016) (stating "the evidence of [the defendant's] guilt [was] overwhelming" and stating the defendant could not "show that counsel's failure to request instructions of lesser-included offenses probably changed the outcome of the proceedings"). Because there is no reasonable probability of a different outcome had Morales been informed of the removal of the voluntary manslaughter instruction and insisted on having it reinstated, we affirm the district court's denial of this ineffective-assistance-of-counsel claim.

## V.    *Cumulative Error*

Morales maintains "[t]he district court erred in failing to consider the cumulative prejudice that resulted from counsel's breach of duties" or, in the

alternative, that postconviction trial counsel was ineffective in failing to raise the issue.

"Iowa recognizes the cumulative effect of ineffective assistance of counsel claims when analyzing prejudice under *Strickland*." *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). "[I]f a claimant raises multiple claims of ineffective assistance of counsel, the cumulative prejudice from those individual claims should be properly assessed under the prejudice prong of *Strickland*." *Id.*

Because the record contains overwhelming evidence of guilt, we conclude the claimed omissions of counsel did not result in cumulative prejudice. We affirm the denial of the postconviction-relief application.

**AFFIRMED.**