**IN THE COURT OF APPEALS OF IOWA**

No. 22-1990
Filed June 19, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LEE VANDYKE CARTER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Winnebago County, James M. Drew,

Judge.


        Lee Carter appeals from his convictions, sentence, and judgment for false

imprisonment and sexual abuse.  **CONVICTIONS AFFIRMED; SENTENCES**

**REVERSED AND REMANDED.**


        Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee.


        Considered by Tabor, P.J., Badding, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**CARR, Senior Judge.**

Lee Carter appeals his convictions, sentence, and judgment for false imprisonment, a serious misdemeanor in violation of Iowa Code section 710.7 (2022), and sexual abuse in the third degree, a class "C" felony in violation of sections 709.1 and 709.4(1)(a), entered following a jury trial. Carter argues the charge of false imprisonment should not have been submitted as a lesser-included offense of the original charge of kidnapping in the first degree, the trial court erred in failing to grant a mistrial due to the admission of prior bad acts evidence, and the trial court inappropriately imposed a mixed sentence of both prison and jail. We affirm Carter's convictions; we reverse his sentences and remand for resentencing.

## I.    *Background Facts and Proceedings*

On July 4, 2022, two weeks after leaving her husband, Lee Carter, T.C. returned home from work. As she was preparing for a night at home, Carter called her indicating his phone and watch were not working. He then told her he was coming over so she could fix it.

Upon arrival, T.C. met Carter outside where he then instructed her to get into his car. Once she had complied, Carter proceeded to drive back to his home in Thompson, Iowa. While at the house, T.C. was subjected to multiple acts of sexual and physical abuse. T.C. remained there until the next day. While there, she did not take advantage of several opportunities to secure help, including from law enforcement officers who came to the house concerning fireworks being discharged, or to otherwise leave the premises. The next day, Carter left for an appointment and T.C. left the house. She was approached by a passerby and was

persuaded to contact law enforcement. Carter was charged with first-degree kidnapping and second-degree sexual abuse.

After a jury trial, Carter was convicted of false imprisonment by confinement, a serious misdemeanor, which the court submitted as a lesser-included offense under the kidnapping charge. Carter was also convicted of third-degree sexual abuse, a lesser included offense of second-degree sexual abuse. Additional facts will be set forth below as relevant to their claims on appeal.

## II.    *Instruction on Lesser Included Offenses*

This court reviews lesser-included-offense complaints for correction of errors at law. *See State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018). Under Iowa Rule of Criminal Procedure 2.19(4)(h), trial courts are required to instruct on lesser-included offenses. *State v. Spates*, 779 N.W.2d 770, 773 (Iowa 2010) (citing Iowa R. Crim. P. 2.6(3), now r. 2.19(4)(h), as modified). If the defendant expressly waives a lesser-included instruction and the State agrees to the waiver, then a trial court is relieved of its obligation. *Id.* at 774.

After the conclusion of the evidentiary portion of the trial, counsel, the defendant, and the court convened to discuss any remaining motions outside the presence of the jury. Following its rulings the court moved on to discuss the jury instructions. The parties and judge specifically discussed the submission of false imprisonment as a lesser-included offense of first-degree kidnapping. The State indicated it was willing to waive the submission of false imprisonment. Defense counsel then requested time to confer with Carter to arrive at a final decision. After conferring, defense counsel stated, "So, Your Honor, at this point now then we would request all the lesser included offenses on both charges, so assault with

intent to commit sex abuse and simple assault." Shortly after, counsel asked for a phrase in the false imprisonment instruction to be reworded, thinking it read "a little bit weird." The court ultimately declined a change of wording.

Now on appeal, Carter is arguing the trial court improperly submitted the offense of false imprisonment. However, at the time of the discussion on lesser offenses neither counsel nor Carter objected to its submission. Nor did counsel or Carter indicate to the court it misunderstood and Carter did not intend to include false imprisonment as a lesser-included offense. Carter cannot now complain the trial court improperly submitted the instruction when he, in fact, requested it and the State was prepared to waive its submission. As such, error was not preserved.

### III.    *Motions for Mistrial: Prior Bad Acts*

The court reviews evidentiary rulings and mistrial claims for an abuse of discretion. *State v. Hunt*, 801 N.W.2d 366, 372 (Iowa Ct. App. 2011). An abuse of discretion occurs when the court's decision is clearly untenable or unreasonable. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014).

Prior to trial, Carter filed two motions in limine to exclude prior bad acts of the defendant. Both motions generically sought to exclude prior bad acts evidence. With the exception of one prior event not material here, the motions did not identify any objectionable acts or events. In recorded proceedings before the commencement of evidence, the trial court sustained the first motion unless a proper record was made in advance. The second motion was sustained without further elaboration.

The State also filed a pretrial motion in limine, seeking, among other things, to exclude proof that while the Carters were living in Kansas City in 2014, T.C had

called police to report Carter was throwing things and yelling at the children and her. At the trial on this report, T.C. recanted her claims under oath. She was later charged with and pled guilty to making a false police report about the incident. Carter resisted excluding this evidence, advancing that T.C.'s prior false report was relevant to prove her bias against him, and her lack of credibility as a witness. The trial court ruled with Carter, denying the State's motion and leaving him free to examine her about the matter.

During trial, Carter argues four instances of T.C.'s testimony amounted to inadmissible prior bad acts testimony. The first occurred when she was explaining why she and Carter had moved to Iowa, stating, "He wanted to be closer to his mom and then he had gotten in trouble." Defense counsel objected. A non-record bench conference was held. No ruling on the objection was made. Thereafter, direct examination of T.C. continued.

T.C. was later asked why she had moved out of the family home. She replied, "Because I could no longer continue to live with the things that I was going through." As with the first exchange, a non-record bench conference was held, again without a ruling on the record.

Third, while being examined about events leading to her accompanying Carter to his house in Thompson on the night of the incident, T.C. was asked about her verbal interaction with him in the car. After relating his crude insults, and a threat to kill her, T.C. continued, saying, "He started telling me about how—just saying he had been to jail before." Defense counsel objected. The jury was excused. Defense counsel moved for a mistrial, citing the two earlier portions of her testimony and the pending answer that Carter told her he had been to jail

before. The trial court denied a mistrial. We view the statement by Carter, made after his threat to kill T.C., as explaining her later failure to seek the assistance of the police and others during her time with Carter at the Thompson house. The trial court so concluded in denying a mistrial. We see no error in the ruling.

The fourth issue on this topic concerns the incident in Kansas City, which was the subject of the State's unsuccessful motion in limine. To get ahead of the charge, the State offered this evidence in anticipation of T.C. being cross-examined on the topic. After an objection by defense counsel, the State was allowed to discuss the event. Carter's second motion for mistrial was overruled.

"Trial courts have considerable discretion in ruling upon motions for mistrial, since they are present throughout the trial and are in a better position than the reviewing court to gauge the effect of the matter in question on the jury." *State v. Jirak*, 491 N.W.2d 794, 796 (Iowa Ct. App. 1992). The trial court's ruling on such a motion "will not be set aside except upon a clear showing of abuse of discretion." *State v. Staker*, 220 N.W.2d 613, 617 (Iowa 1974). "Ordinarily, abuse of discretion is found" upon the denial of a mistrial "only where there is no support in the record for the trial court's determination." *State v. Lewis*, 391 N.W.2d 726, 730 (Iowa Ct. App. 1986).

Having carefully reviewed the transcript of evidence and, in particular, the direct examination of T.C., we hold the first two of the alleged evidentiary errors asserted by Carter were not properly preserved for appellate review. Failure to obtain a ruling on an evidentiary objection generally constitutes a waiver of error. *State v. Trane*, 984 N.W.2d 429, 435 (Iowa 2023). The first mistrial motion, by defense counsel, came after the three statements T.C. made on direct

examination. The first two of these were not ruled on by the trial court. The third item of evidence, that in course of threatening T.C., Carter stated he had been to jail before, led to the first mistrial motion. As we explained above, we think the questioned evidence was relevant to explain why T.C. remained at the Thompson home despite apparent chances to get away. The trial court's denial of a mistrial was not an abuse of its considerable discretion.

Regarding the fourth issue—the prior police report by T.C. and her later plea of guilty to making a false police report—the trial court was well within its discretion to overrule the objections and deny a mistrial. Carter was understandably intent on proving that T.C. had before made a false report against Carter. The content of her report was coming into evidence either on the State's direct examination of her, on Carter's cross examination, or both. The trial court determined to permit the State to introduce the topic by first proving the content of the report then proving her plea of guilty to its falsity. Carter had a full opportunity to cross examine her about the incident. We perceive no error in this approach.

## IV. Sentencing.

Review of an illegal sentence claim is for the correction of errors at law. *State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015). Carter claims the sentence he received was illegal because he was sentenced to periods of confinement in both the county jail and the Iowa Department of Corrections (IDOC).

Under Iowa Rule of Criminal Procedure 2.24(5)(a), a sentence is illegal if it is not authorized by the statute. Iowa R. Crim. P. 2.24(5)(a). Iowa Code section 901.7 provides:

> In imposing a sentence of confinement for more than one year, the court shall commit the defendant to the custody of the director of the Iowa department of corrections. Upon entry of judgment and sentence, the clerk of the district court immediately shall notify the director of the commitment.

Iowa Code § 901.7.

Carter received a ten-year prison sentence for sexual abuse in the third degree and a one-year term of incarceration in the county jail for false imprisonment. He contends the confinement of a year in county jail is illegal because "the entire term of imprisonment must be served in a place designated by the director of the Department of Corrections."

The State agrees this type of sentence would ordinarily be improper and Carter is correct in arguing the entire sentence should be served in prison. The State advances, however, this will occur even without intervention by this court. The State claims because the terms are concurrent and Carter was committed to the IDOC, thus serving his prison sentence first, the issue is moot. The State cites and provides a link to the IDOC website to show Carter's tentative discharge date from his prison sentence to be April 2029, and his "jail sentence" tentative discharge date to be March 27, 2025. Therefore, according to the State, Carter will discharge his one-year jail sentence four years before he discharges his prison sentence.

We recognize that a claim of mootness can by supported by facts technically outside the record. *Iowa Mutual Ins. Co. v. McCarthy,* 572 N.W.2d 537, 539 n.1 (Iowa 1997). However, a recent visit to the linked website only indicates the discharge date of Carter's prison term. Furthermore, Carter does not have a mandatory minimum sentence, and could be paroled at any time. Therefore, we

cannot conclude with certainty that he will have discharged his misdemeanor sentence by then.  As a result, we do not find the issue is moot as merely academic or without practical legal effect.  See *Christenson v. Iowa District Court*, 578 N.W.2d 675, 679 (Iowa 1998).  We reverse the sentence and remand for a corrected sentence, with direction for both sentences to be served with the IDOC.

**CONVICTIONS AFFIRMED; SENTENCES REVERSED AND REMANDED.**