**STATE of Iowa, Appellant,**

v.

**Valerie Lynn REEVES, Appellee.**

**No. 00–0481.**

Supreme Court of Iowa.

Nov. 15, 2001.

As Corrected Dec. 26, 2001.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, and Michael E. Wolf, County Attorney, for appellant.

Jon M. Kinnamon and Jerald W. Kinnamon, Cedar Rapids, for appellee.

LARSON, Justice.

This defendant, Valerie Reeves, was convicted of second-degree murder and appealed. The court of appeals reversed and remanded for the district court to assess her new-trial motion under the weight-of-the-evidence standard adopted in *State v. Ellis,* 578 N.W.2d 655, 658–59 (Iowa 1998). On remand the district court, applying this new standard, ordered a new trial. The State appealed. The court of appeals affirmed the new-trial order, and we granted the State's application for further review. We vacate the court of appeals decision and remand for a new hearing on the defendant's motion for new trial.

### I. *Facts and Prior Proceedings.*

The following facts are based largely on defendant's testimony. On September 28, 1997, Reeves left on a hitchhiking trip from her home in Normal, Illinois, to Sabula, Iowa. Along with clothing, Reeves packed her husband's ten millimeter handgun. After her ride dropped her off in Sabula, she went to a tavern to drink and inquire about a place to stay for the night. The bartender called a local bed and breakfast, but there were no rooms available. One of the bar customers, Eugene Malone, offered to let her stay at the house he shared with his mother. Malone and Reeves had never met before, but the female bartender assured Reeves it would be all right, as the bartender knew Malone. Reeves left the bar with Malone. Malone's autopsy indicated his blood alcohol content was nearly twice the legal limit. Reeves testified she had drunk enough she was blacking out at times and she was "very loaded."

Malone took Reeves to his home. Reeves testified that once there, Malone made a sexual advance toward her, which she rejected. Malone's mother later said she heard a female voice saying "no, no, no." Reeves testified Malone became angry because Reeves had disturbed his mother, and he suggested they leave. Reeves believed Malone was taking her to stay somewhere else.

According to Reeves, Malone drove them in his truck into the country. She testified he stopped the truck and "attacked" her by leaning onto her and pinching her breasts very hard. Reeves testified she panicked, began screaming, and fired the gun although she does not remember retrieving it from her bag. Reeves ran from the truck because she was frightened Malone would follow her. For thirty hours, she wandered through road ditches and fields before entering a nearby town where she was spotted by a sheriff's deputy and arrested. Reeves said she was aware of the search being conducted by law enforcement.

Authorities later found a pile of the defendant's clothing in a road ditch. Reeves testified she changed out of her clothes because they had blood on them and because, when she was frightened by the event, she had soiled her pants. The gun was found in a stream along with her bag approximately two miles from where the truck was found. The gun had three safeties, designed to prevent accidental discharge by dropping, but on this model all three safeties were disengaged merely by pulling the trigger.

Investigation of the crime scene revealed six shots had been fired, four of which struck Malone. At trial Dr. Peter Stephens, a forensic pathologist, testified for the defendant. He testified that powder burns and marks on Malone's skin indicated the first shot struck him below the arm and went down into his stomach. The position of this wound was consistent with Malone leaning toward Reeves. The second shot struck the top of Malone's right shoulder. The third grazed his right check and the tip of his nose. The fourth entered the back of Malone's skull. As the shots were fired, the muzzle of the gun became increasingly elevated, which frequently occurs with inexperienced shooters and is a natural consequence of the gun's recoil, according to this witness. He also testified that the sequence of shots was consistent with a struggle, and the progressive elevation of shots indicated Reeves had fired the gun in a continuous operation without having to reacquire the target each time the gun was fired.

In the district court's ruling on the motion for new trial, it stated "[m]alice aforethought can be inferred from the use of a deadly weapon *but must be accompanied by an opportunity to deliberate.*" (Emphasis added.) The court concluded, "[t]here is no credible evidence which shows that the Defendant had an opportunity to deliberate prior to discharging the weapon at the victim."

## II. *Issues on Appeal.*

A. *The malice element.* The sole substantive issue on appeal is whether the district court erred in applying the weight-of-the-evidence standard by ruling that the inference of malice in second-degree murder requires an opportunity to deliberate as well as the use of a deadly weapon. The court of appeals correctly noted that our cases are confusing on this question. The court ruled, under a sort of "fairly debatable" rationale, that the district court could not be held in error for choosing one of two parallel lines of cases—one requiring proof of an opportunity to deliberate and the other not. The court of appeals observed:

The law in this area is uncertain. The district court had valid legal support for its ruling. We cannot find, therefore, that it committed error.

Many Iowa cases have cited the proposition stated in *State v. Love*, 302 N.W.2d 115, 119 (Iowa 1981), that "[t]he use of a deadly weapon, accompanied by an opportunity to deliberate, even for a short time, is evidence of malice." *See State v. Ramirez*, 616 N.W.2d 587, 592 (Iowa 2000) (citing *Love*); *State v. Klindt*, 389 N.W.2d 670, 676 (Iowa 1986) (citing *Love*); *State v. Walker*, 538 N.W.2d 316, 319 (Iowa Ct. App.1995) (citing *Love*); *State v. Nunn*, 356 N.W.2d 601, 603 (Iowa Ct.App.1984) (citing *Love*); *see also State v. Brown*, 589 N.W.2d 69, 75 (Iowa Ct.App.1998) (citing authority tracing back to *Love*); *State v. Taylor*, 516 N.W.2d 38, 41 (Iowa Ct.App. 1994) (citing *Nunn*); *State v. Wheeler*, 403 N.W.2d 58, 62 (Iowa Ct.App.1987) (citing *Nunn*). However, *Love* apparently confused the elements of first- and second-degree murder when it paraphrased oft-repeated boilerplate language contained in *State v. Frazer*, 267 N.W.2d 34, 39 (Iowa 1978), which is properly applicable only to our first-degree murder cases.

■ Malice is required for both degrees of murder. *See* Iowa Code § 707.1 (1997) ("A person who kills another person with malice aforethought either express or implied commits murder."). However, first-degree murder requires proof of deliberation and premeditation in addition to malice aforethought. *See* Iowa Code §§ 707.1, 707.2(1). Second-degree murder, on the other hand, does not require deliberation and premeditation; it requires only proof of malice aforethought. *Compare* Iowa Code § 707.2(1) *with* § 707.3. Our first-degree murder cases have long held that the use of a deadly weapon supports an inference of malice, and when accompanied by an opportunity to deliberate, also sup-

ports an inference of deliberation and premeditation. *See, e.g., Frazer*, 267 N.W.2d at 39 ("The use of a deadly weapon accompanied by an opportunity to deliberate, even for a short time, is evidence of malice, deliberation, and premeditation."); *State v. Heinz*, 223 Iowa 1241, 1258–59, 275 N.W. 10, 20 (1937).

■ *Love* erroneously incorporated an opportunity-to-deliberate requirement into the malice inference because such an opportunity to deliberate actually raises an inference of premeditation and deliberation in first-degree murder cases. Obviously, if deliberation is not required for second-degree murder, an *opportunity* to deliberate is irrelevant. This is consistent with the general rule, and Iowa case law prior to *Love*, that the inference of malice arises simply "from the intentional use of a deadly weapon in a deadly manner" without the requirement of an opportunity to deliberate. *See Heinz*, 223 Iowa at 1259, 275 N.W. at 20; 40 C.J.S. *Homicide* § 37, at 397 (1991); *see also State v. Smith*, 242 N.W.2d 320, 326 (Iowa 1976) ("[M]alice aforethought may be inferred from defendant's use of a pistol or revolver, *i.e.*, a deadly weapon."); *State v. Hephner*, 161 N.W.2d 714, 720 (Iowa 1968) ("Assault with a deadly weapon implies malice . . . ."); *State v. Myers*, 248 Iowa 44, 56, 79 N.W.2d 382, 390 (1956) ("The use of a deadly and dangerous weapon in a dangerous manner raises a[n] [inference] of malice, and therefore murder in the second degree."); *State v. Woodmansee*, 212 Iowa 596, 620, 233 N.W. 725, 736–37 (1930); *State v. Phillips*, 118 Iowa 660, 677, 92 N.W. 876, 881–82 (1902); *State v. Gillick*, 7 Iowa 287, 311 (1858) ("Malice is legitimately inferred from the weapon used; and where the killing is with a dangerous weapon, calculated to produce, and actually producing death . . . the [inference] is, that the act

was voluntary, and with malice aforethought.").

We conclude the district court erred in requiring proof of an opportunity to deliberate as a part of the inference arising from the use of a deadly weapon in second-degree murder. We overrule *Love* and its progeny to the extent they are inconsistent with this holding. This brings us to the issue of disposition.

 B. *Disposition.* We give considerable deference to a trial court's ruling on a motion for new trial, *State v. Atley,* 564 N.W.2d 817, 821 (Iowa 1997), and we are more hesitant to interfere with the granting of a new trial than with a refusal. Iowa R.App. P. 14(f)(4). The failure to establish an opportunity to deliberate was the pivotal point of the district court's ruling. It said:

> Malice aforethought can be inferred from the use of a deadly weapon *but must be accompanied by an opportunity to deliberate.* In other words, there must be something more than the use of a dangerous weapon to support malice aforethought. In most of the cases that decide whether or not there is credible evidence to support malice aforethought, the facts indicate some type of argument, previous relationship, particular display of anger or hatred that occurred prior to the use of the weapon.
>
> . . . .
>
> In order to succeed, the State must prove beyond a reasonable doubt that the Defendant had an opportunity to deliberate prior to the act of firing the weapon. . . . There is no credible evidence which shows that the Defendant had an opportunity to deliberate prior to discharging the weapon at the victim.

(Emphasis added.)

While the district court's weighing of the evidence is entitled to deference, its view

of the law is not. Because the test applied here was the basis of the ruling and was erroneous, we reverse and remand to the district court to enter a ruling based on the existing record and without regard to whether the defendant had an opportunity to deliberate.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except STREIT, J., who takes no part.