# IN THE COURT OF APPEALS OF IOWA

No. 16-1810
Filed October 11, 2017

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**RONALD LEE RAND,**
　　　Defendant-Appellant.

_____

Appeal from the Iowa District Court for Franklin County, DeDra L. Schroeder, Judge.

Ronald Rand appeals from his conviction following a jury trial for first-degree murder. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**DANILSON, Chief Judge.**

Ronald Rand appeals from his conviction following a jury trial for first-degree murder, in violation of Iowa Code sections 707.1 and 707.2(1)(a) (2015). Rand asserts there is insufficient evidence establishing the elements of premeditation and malice aforethought. We conclude there is substantial evidence supporting the jury's verdict and therefore affirm.

**I. Background Facts & Proceedings.**

On the evening of December 13, 2015, Jason Awe received a phone call from Rand stating there was an accident; Rand's girlfriend, Michelle Key, had been shot; and he was going to commit suicide. Awe left his home immediately to go to Rand's home in Hampton. While driving, Awe alerted authorities in Hampton that Rand was suicidal. Awe arrived at Rand's home before the police and went inside. Awe saw Key in the living room lying back against the couch in an upright position with a large gunshot wound to the left side of her neck. Rand was kneeling in front of Key with his head in her lap. Awe also saw a shotgun on the couch and moved it to Rand's garage.

When Officer David Kelley arrived at the residence, he spoke with Awe. Awe told Officer Kelley that Rand had shot his girlfriend. Officer Kelley looked into the house and observed Key was not moving and appeared to be deceased. Officer Kelley testified that as he entered the residence and approached Rand, Rand stated, "I killed her, I killed my baby." Officer Kelley testified Rand also stated, "I didn't mean to do it." As Officer Kelley placed Rand in handcuffs, Rand stated, "[I]t was an accident, I didn't mean for it to go off, I shot her, and she's dead." Rand's jeans, shirt, face, beard, and the left side of his eyeglasses were

splattered with dried blood. Officer Kelley called for backup, placed Rand in his patrol car, and read Rand his *Miranda*[1] rights.

While in Officer Kelley's patrol vehicle, Rand told Officer Kelley about the events of that day. Rand stated he and Key had argued because Key had cheated on Rand. Rand told Officer Kelley he "lost it" and said "that bitch knows how to push my buttons." Rand stated he went to get a shotgun to scare Key, pointed it at Key, and told her if she ever cheated again, this is what is going to happen. Officer Kelley testified that Rand stated Key "got up off the couch and grabbed the shotgun barrel and pulled it like a tug-of-war twice, and [Rand] said the gun went off and [Rand] killed [Key]."

After being examined at the hospital, Rand was taken to the jail to be interviewed by Iowa Division of Criminal Investigation Special Agent Chris Callaway. During the interview, Rand explained he and Key had dated on-and-off for approximately eleven years. Rand stated he was informed about a month prior to the shooting that Key had been unfaithful but claimed he had forgiven her. Rand was very emotional during the interview. He stated he pointed the shotgun at Key in a "joking" manner, she grabbed the end of the shotgun and pulled a couple of times, and the shotgun went off. Rand provided inconsistent statements about whether he believed the shotgun was loaded at the time, his reasoning for getting the shotgun, and whether his finger was on the trigger.

Posts from Rand's social-media account were admitted at trial. There were a number of posts made by Rand in November 2015 about Key's infidelity. In one social-media comment written on November 14, Rand stated, "I just keep

---

[1] *See Miranda v. Arizona*, 384 U.S 436, 444-45 (1966).

the mental homicides going can't seem to get out of my head doctor says its okay long as I don't act on it . . . ."[2]  On November 15, Rand wrote, "Hopefully I'm headed in that direction right now I'm still working on mental homicide . . . ."  And on November 26, Rand wrote, "Not feeling too thankful this year complete end to an 11 year relationship, cheating, betrayal lies and more . . . whatever happened to loyalty and trust."

Rand also posted photos to his account of himself posing with the shotgun.  Rand borrowed the shotgun from Awe shortly after he learned of Key's affairs.  Rand testified he obtained the gun for "home defense" because he had been burglarized in 2012.  Rand also testified he had been threatened by the man Key was involved with, John O'Brink.  Rand stated he posted the pictures of himself with the shotgun on social media "for one, just to show that I have it in case the one who burglarized my house might still be around.  And the other one was I knew that John would be checking my Facebook page . . . and I wanted him to see that."

The jury trial commenced on August 22, 2016.  At trial, Rand testified he got the shotgun out on the evening of December 13, 2015, "So I could show it to [Key], how it worked and everything."  Rand stated he was "chucking the barrel to make the slug come out of the gun" when Key grabbed the end of the shotgun, Rand pulled away, and it went off.  Rand testified he did not clearly remember the events during or after the shooting.

---

[2] At trial, Rand testified "mental homicide" was something recommended to him by his sponsor in an substance-abuse program to manage anger.  Rand stated he was told "if you feel like, you know, being that mad or if you get ticked off at somebody, you can commit mental homicide, and you don't act on it."

The jury found Rand guilty of first-degree murder. Rand now appeals.

**II. Standard of Review.**

"We review a challenge to the sufficiency of evidence for correction of errors at law." *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016).

> We "consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. We will uphold a verdict if substantial record evidence supports it." Evidence is substantial when "a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt." If evidence only raises "suspicion, speculation, or conjecture," it is not substantial evidence.

*Id.* (citations omitted)

**III. Analysis.**

Rand maintains the evidence is insufficient to support the premeditation and malice-aforethought elements required to uphold his conviction for first-degree murder.

The jury was instructed it was required to find Rand acted willfully, deliberately, premeditatedly, and with a specific intent to kill and with malice aforethought in order to reach a guilty verdict on the first-degree murder charge.

*A. Premeditation.* "Premeditation may be shown through evidence of (1) activity by the defendant to plan the killing, (2) motive based on the relationship between the defendant and the victim, or (3) the nature of the killing, including the use of a deadly weapon combined with an opportunity to deliberate." *State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003). "[T]he law does not require any minimum amount of time to premeditate and a few minutes are certainly adequate." *Id.* at 49.

By all accounts, Rand and Key had a tumultuous relationship that was especially fraught with tension just prior to Key's death due to Rand learning of Key's affairs. The record establishes Rand was upset by Key's infidelity, providing strong evidence of motive. On his social-media account, Rand spoke on more than one occasion about his "mental homicides" with respect to the troubles in his and Key's relationship. Rand borrowed the shotgun from Awe around the same time he learned of Key's affairs. Although Rand claimed he had forgiven Key on the day she was shot, he told Officer Kelley that Key had discussed the affairs just prior to the shooting. Rand made the conscious decision to retrieve the shotgun from the bedroom and bring it to the living room where Key was located. The time taken to retrieve the shotgun allowed for reflection and deliberation. *See State v. Wilkens*, 346 N.W.2d 16, 20 (Iowa 1984) ("Premeditation and deliberation need not exist for any particular length of time.").

Moreover, at trial Rand admitted he "must have" shot the shotgun causing Key's death. On the day of the shooting, Rand told officers he retrieved the shotgun and pointed it at Key to scare her, but at trial he testified that he was simply showing Key how the shotgun worked when she grabbed it, and it accidentally went off. The jury could have concluded Key's death was an accident if they found Rand's testimony credible. However, the evidence also supported the conclusions that Rand intentionally pointed a deadly weapon at Key, Rand and Key had a turbulent relationship, both had consumed alcohol and used marijuana, and just prior to Key's death there was a discussion about Key's affairs—a topic that angered Rand. In fact, Rand told the officers "he lost it," "that bitch knows how to push my buttons," and he was "fucking guilty." We find

there is substantial evidence beyond mere speculation or conjecture supporting the jury's finding of premeditation.

*B. Malice Aforethought.* "[M]alice aforethought is 'a fixed purpose or design to do some physical harm to another existing prior to the act complained of . . . .'" *State v. Serrato*, 787 N.W.2d 462, 469 (Iowa 2010).

> Because [malice aforethought] is a state of mind, circumstantial evidence is generally used to prove malice. Evidence of bad feelings or quarrels between the defendant and the victim are circumstances that may be used to support a finding of malice aforethought. Malice may also be inferred from the use of a deadly weapon.

*Buenaventura*, 660 N.W.2d at 49 (citations omitted).

Here, there is no dispute Key was killed by the use of a deadly weapon. Thus, the jury could infer malice aforethought. *See State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001) ("Our first-degree murder cases have long held that the use of a deadly weapon supports an inference of malice . . . ."). Additionally, viewed in the light most favorable to the State, the evidence reflects the circumstances of the relationship between Rand and Key, which support a finding of malice aforethought. The relationship had an on-again-off-again history made more tenuous by Rand's recent discovery of Key's affairs. The facts provide substantial evidence from which the jury could conclude Rand acted with a fixed purpose or design to do some physical harm to Key.

**IV. Conclusion.**

Because we find substantial evidence supports the jury's findings that Rand acted with premeditation and malice aforethought, we affirm.

**AFFIRMED.**