# IN THE COURT OF APPEALS OF IOWA

No. 17-0007
Filed January 10, 2018

**CATHRYN ANN LINN,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Muscatine County, Nancy S. Tabor,

Judge.

Cathryn Linn appeals the district court's order granting summary judgment

on her application for postconviction relief following her 2007 conviction for first-

degree murder.  **AFFIRMED.**

Darrell G. Meyer, Marshalltown, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee State.

Considered by Potterfield, P.J., Mullins, J., and Carr, S.J.*  Tabor, J., takes

no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**CARR, Senior Judge.**

Cathryn Linn appeals the district court's order granting summary judgment on her application for postconviction relief (PCR) following her 2007 conviction for first-degree murder, claiming evidence of battered women's syndrome should have been introduced by trial counsel and admitted by the district court to bolster her justification defense. Linn also raises a claim of ineffective assistance of PCR counsel. Upon our review, we affirm the court's order denying Linn's application for postconviction relief.

## I.  *Background Facts and Proceedings*

In its opinion affirming Linn's conviction on direct appeal, this court set forth the following facts surrounding the incident leading to Linn's charge:

> Muscatine police officers were dispatched to Linn's residence in the early morning hours of February 7, 2007, after Linn called 911 to report she had shot someone. Several officers arrived at the residence brandishing weapons. Linn appeared at the door, yelling and screaming, and was told to show her hands. Upon determining Linn was unarmed, the officers entered the residence and discovered the body of Barry Blanchard in the bedroom. An M-1 carbine rifle and gun case were on the bed.
> While the officers were investigating inside of the house, Officer Jason Williams stayed on the porch with Linn. She was only wearing a nightgown, so another officer located a pair of boots and coat inside the home for Linn. While Linn was sitting on the steps, an officer yelled out of the house and asked, "Is she saying she shot him?" In turn, Williams asked her, "Did you shoot him?" to which Linn replied, "Yes." Linn also stated, "I only had one gun and one bullet, and I shot him because he was not being nice to me."
> Linn was informed she needed to go to the Public Safety Building and speak with a detective. Officer Williams transported Linn in the backseat of his squad car. Linn was informed she was not under arrest. She was not handcuffed and Officer Williams did not attempt to question her. Linn asked Officer Williams if Blanchard had died, and Williams replied that he did not know. Linn also stated, "My life has ended up as [a] murder."
> Detective Mark Lawrence was asked to interview Linn upon her arrival at the station. Detective Lawrence was told Linn was not

under arrest. However, he decided to advise her of her *Miranda* rights because she was confined to an investigation room, believing it to be the prudent thing to do. Linn asked, "Did I kill him?" and "Did he die?" Detective Lawrence told Linn that before he could answer her questions, he had to read the *Miranda* form to her. He also told her he did not know if Blanchard was dead. Linn signed the waiver. An analysis of Linn's urine shows her blood alcohol concentration at the time was .181.

During the police interview, Linn admitted to threatening Blanchard with the rifle. She also stated that she told Blanchard no one was going to tell her what to do in her house and that the shooting occurred after Blanchard dared her to shoot him.

On February 14, 2007, Linn was charged with first-degree murder. She filed a motion to suppress the statements "made . . . to Muscatine Police Officers after she was in custody of the officers" because "the waiver of her right to counsel was not made knowingly, voluntarily and intelligently." Following a hearing on the motion, the court concluded Linn's waiver of her *Miranda* rights was valid and overruled the motion to suppress.

A jury trial was held in September 2007. Linn testified and relied on a defense of intoxication and justification. The evidence presented shows Linn and Blanchard had been involved in a romantic relationship and were living together. Before the shooting, the couple agreed their relationship was not working and Blanchard planned to move out of the house. However, he was unable to find a place to stay and Linn agreed to allow him to sleep on her couch. Both Blanchard and Linn consumed alcohol on the night of the shooting.

According to Linn's trial testimony the following occurred: at some point in the evening, Blanchard slapped her and asked her, "How many marks do you want in the morning, bitch?" Linn told Blanchard he was not going to tell her what to do in her house. Blanchard followed Linn into the bedroom and told her he would "fuck [her] dead or alive" and undressed. Blanchard choked her and she was frightened he was going to rape her. The rifle was retrieved from the closet and both Linn and Blanchard handled the weapon while screaming at each other. The gun discharged and "[t]he next thing I knew, he was on the floor, and I had then realized that he had been the victim of the discharge of the weapon." She denied having any intention of killing Blanchard.

Contrasting statements by Linn to the 911 operator and the police officers were presented to the jury. She told the 911 operator she shot Blanchard and they were fighting and drinking. The officers testified to the statements she made on the steps when they arrived and how in the squad car on the way to the police station she stated, "My life has to end up as [a] murder." Linn also told officers

> Blanchard had dared her to shoot him and she shot him because she was angry.
>
> On September 14, 2007, the jury returned a verdict finding Linn guilty of first-degree murder. On October 24, 2007, Linn was sentenced to life in prison. She appealed on November 13, 2007.

*State v. Linn*, No. 07-1984, 2009 WL 605968, at *1-2 (Iowa Ct. App. Mar. 11, 2009) (footnote omitted).

On appeal, Linn challenged the district court's ruling on her motion to suppress and the sufficiency of the evidence to support her conviction. *Id.* at *2-5. She also raised several claims of ineffective assistance of counsel. *Id.* at *5-7. This court rejected her claims and affirmed her conviction. *See id.* at *2-7.

Linn filed a application for PCR, contending in part her trial counsel was ineffective in failing to introduce evidence regarding battered women's syndrome (BWS) to strengthen her justification defense. Linn also filed an application to retain an expert on BWS at State expense. The State filed a motion for summary disposition, which the district court granted. The court's ruling also denied Linn's request for a BWS expert.

Linn appeals. Facts specific to her claims on appeal will be set forth below.

## II.    *Standards of Review*

"Generally, an appeal from a denial of an application for postconviction relief is reviewed for correction of errors at law." *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016) (citation omitted). However, "ineffective-assistance-of-counsel claims are reviewed de novo." *Id.* Insofar as Linn challenges the denial of her application for the appointment of an expert witness to assist in developing her PCR claims,

that ruling is reviewed for an abuse of discretion. *See Penwell v. State*, No. 09-1820, 2011 WL 238196, at *5 (Iowa Ct. App. Jan. 20, 2011).

### III. Discussion

Summary judgment in a postconviction proceeding may be granted "when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Iowa Code § 822.6 (2009). "The moving party has the burden of showing the nonexistence of a material fact and the court is to consider all materials available to it in the light most favorable to the party opposing summary judgment." *Manning v. State*, 654 N.W.2d 555, 560 (Iowa 2002). Here, the PCR court summarily denied Linn's BWS claim, stating:

> Linn's claim that trial counsel was ineffective for failing to raise Battered Women's Syndrome fails. She provides no information as to what facts were available to her trial counsel to support such a claim. She provides no expert witness testimony by affidavit to explain how a jury might have been told that the syndrome was relevant. And, more importantly, the State of Iowa correctly notes that such syndrome evidence would have been inconsistent with her trial testimony about the nature of the shooting. Linn cannot demonstrate that her trial counsel's performance was deficient and there is no evidence of resulting prejudice.

On appeal, Linn contends summary judgment was erroneous because "Iowa courts have recognized evidence of BWS as proof in support of a justification defense" and "there is substantial record evidence clearly demonstrating counsel's awareness of facts sufficient to support a BWS defense" in her case. Linn also challenges the court's denial of her application to retain a BWS expert at State expense.

This court has "previously acknowledged that BWS is not a defense unto itself, but instead offers jurors a window through which a justification claim of self-defense may be understood in a particular case." *Shelburn v. State*, No. 12-0830, 2013 WL 3457097, at *2 (Iowa Ct. App. July 10, 2013) (citing *State v. Price*, No. 07-1659, 2008 WL 5234351, at *2, *6 (Iowa Ct. App. Dec. 17, 2008) (holding the BWS expert's testimony "would have given the jury information that it needed to understand the significance and meaning of the victim's conduct and to understand the defendant's reaction to that conduct," where the defendant "testified that just prior to the stabbing, [the victim] stated he was going to kill her, . . . [the victim] came at her to punch her in the head, and [the defendant], fearing for her life, then picked up a knife lying on the floor and stabbed [the victim]")).

Here, evidence to support a BWS component of Linn's justification defense was presented at trial, and the jury had the opportunity to consider it in reaching its verdict. As Linn acknowledges, trial counsel told the jury during opening statement "the defense was one of justification and that the evidence would show 'things in [Linn's] life that related to her relationship with [her abuser] and the events of February 6 and February 7.'" Linn recites specific pieces of information trial counsel elicited from her during direct examination, including evidence relating to her history of abuse by Blanchard, her fear of Blanchard, her unsuccessful attempts to end her relationship with Blanchard, Blanchard's threats and controlling behavior toward her, Blanchard's reputation for being tough and intimidating, and the fact that her sister had been killed by an abusive partner. Trial counsel further elicited testimony from Linn that Blanchard "promised he would cut her from her pussy to her throat and fuck her in the throat while she is bleeding,"

and that he would "fuck her dead or alive." Linn testified she was unemployed, an alcoholic, and medicated for mental health issues, and Blanchard pressured her to buy drugs and controlled her by taking her money, food stamps, and medication. *Cf. State v. Rodriquez*, 636 N.W.2d 234, 246 (Iowa 2001) (describing evidence reflecting a "cycle of violence").

But the jury also heard evidence that would disprove a BWS-supported claim of self defense. When a claim of self defense is supported or explained by evidence of BWS, the State may disprove it by establishing any one of the following: (1) the defendant initiated or continued the fatal incident, (2) the defendant did not believe there was an imminent danger requiring deadly force, (3) the defendant did not have a reasonable grounds for believing deadly force was necessary, or (4) the force actually employed was not reasonable. *See State v. Nunn*, 356 N.W.2d 601, 604 (Iowa Ct. App. 1984), *overruled on other grounds by State v. Reeves*, 636 N.W.2d 22, 25-26 (Iowa 2001).

Specifically, the jury received evidence of Linn's statements to police, "I only had one gun and one bullet, and I shot him because he was not being nice to me," and, "My life has ended up as [a] murder." *See id.* (noting a BWS-supported claim of self defense can be disproved by establishing the defendant initiated or continued the fatal incident). The jury also received evidence that Linn admitted to threatening Blanchard with the rifle, that she told Blanchard no one was going to tell her what to do in her house, and that the shooting occurred when she was angry after Blanchard dared her to shoot him. *See id.* Because this evidence would rebut a BWS justification defense, Linn's claim is unpersuasive. Linn cannot show she was prejudiced by counsel's failure, and she has not created a material

issue of fact on this issue.[1]  *See Shelburn*, 2013 WL 3457097, at *3 ("Counsel concluded, based upon admissions made by Shelburn to law enforcement, that the BWS[-supported] justification defense would have been very difficult to pursue."); *see also State v. Sallie*, 693 N.E.2d 267, 270 (Ohio 1998) ("[T]rial counsel could have reasonably concluded expert testimony about battered woman syndrome was unnecessary and irrelevant.  Sallie consistently maintained the shooting was accidental—that she did not intentionally pull the trigger.  Testimony by the State's witnesses supported this position.  Because Sallie did not claim she shot Brown in self-defense, evidence that she may have suffered from battered woman syndrome was immaterial.").  And for these reasons,[2] even if a BWS expert was procured and had offered testimony to explain BWS to the jury, it would not have changed the result of trial.  This conclusion also resolves any claimed error in the PCR court's refusal to appoint such an expert in this case.  Summary disposition was proper.

---

[1] To prevail on a claim of ineffective assistance of counsel, Linn must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted."  *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A claim of ineffective assistance of counsel fails if either element is lacking.  *See State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012).

[2] Including, for example, Linn's testimony of accidental discharge and her many contrary admissions to the police after the shooting.  *But see Price*, 2008 WL 5234351, at *6 (concluding prejudice was shown from the court's exclusion of expert testimony on BWS where the defendant, "fearing for her life," stabbed the victim as he "came at her to punch her in the head," because "the expert's testimony would have been relevant in aiding the jury's determination of whether Price did have a reasonable belief that she was in imminent danger of injury or death or whether Price had an alternative course of action").  *Price* is not on point here.  The question in *Price* was whether the court erred in refusing to admit expert testimony from a BWS expert.  Here, the question is whether material facts are in dispute that trial counsel was ineffective for failing to procure and offer expert testimony about BWS and whether prejudice resulted.

Linn also contends PCR counsel was ineffective "for failing to comply with Iowa Rule of Civil Procedure 1.981 in resisting the State's motion for summary judgment." Specifically, Linn claims PCR counsel failed to "set forth affidavits or transcripts to refute the State's alleged facts" and failed to "secure an[] expert on BWS." Aside from challenging counsel's failure to retain a BWS expert, Linn does not identify any facts PCR counsel could have used to give her claim a chance of surviving the State's motion for summary judgment. "When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (citation omitted).

Here, PCR counsel filed an amended application, a resistance to the State's motion for summary judgment, and answers to interrogatories. *See Rickey v. State*, No. 16-1212, 2017 WL 2461560, at *3 (Iowa Ct. App. June 7, 2017) ("Unlike *Lado* [*v. State*, 804 N.W.2d 248, 252 (Iowa 2001)], in which counsel took no action at all, Rickey was not completely denied counsel, actually or constructively, at any point in the proceeding. Rickey's PCR counsel filed an amended application for PCR, assisted Rickey in responding to the State's interrogatories, and requested additional time to respond to the State's discovery request. After the State filed a motion to dismiss, Rickey's PCR counsel filed a resistance."). And Linn has not alleged any facts in dispute or identified any legal authority PCR counsel should have included in her resistance. *See id.* (rejecting claim of ineffective assistance of PCR counsel for failure to file a statement of disputed facts and a memorandum

of authorities in support of the applicant's resistance to the State's motion for summary disposition).  Furthermore, Linn has not asserted she was prejudiced by PCR counsel's alleged errors.  *See Strickland*, 466 U.S. at 694; *Dunbar*, 515 N.W.2d at 15-16 ("Because Dunbar cannot show prejudice, this alleged error by postconviction counsel affords no basis for an ineffective assistance of counsel claim.").  Linn's claim of ineffective assistance of counsel thus fails.

Upon consideration of the issues raised on appeal, we affirm the district court's order granting summary judgment on Linn's PCR application.

**AFFIRMED.**