# IN THE COURT OF APPEALS OF IOWA

No. 18-0229
Filed October 10, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JASON BENDICKSON,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Colleen D. Weiland (plea), James M. Drew (motion for new counsel), Gregg R. Rosenbladt (motion to withdraw guilty plea), and Rustin T. Davenport (sentencing), Judges.

A defendant who pleaded guilty now seeks a remand so he may have a hearing on his actual-innocence claim. **CONDITIONALLY AFFIRMED AND REMANDED WITH DIRECTIONS.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel L. Mullins, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Jason Bendickson pleaded guilty to first-degree theft and third-degree burglary. Before the district court imposed a sentence, Bendickson moved to withdraw those pleas. The district court denied the motion, finding Bendickson did not show his pleas were unknowing or involuntary. On appeal, Bendickson requests a remand to show he is "actually innocent" of theft and burglary, citing the intervening decision in *Schmidt v. State*, 909 N.W.2d 778, 789 (Iowa 2018). Because *Schmidt* held "convicted defendants can attack their pleas when claiming actual innocence even if the attack is extrinsic to the pleas," we agree a remand is appropriate. *Id.* We conditionally affirm Bendickson's convictions and remand for a hearing on his preserved freestanding claim of actual innocence.

## I.    Facts and Prior Proceedings

According to the minutes of testimony, a Mason City couple reported $80,000 worth of jewelry stolen from their home in late March 2017. Debra Ewing later told investigators she saw Jason Bendickson leave a Mason City home "with a 'lot' of jewelry." In early April, Bendickson and Ewing tried to sell a $30,000 diamond ring to Pawn America in Roseville, Minnesota. Investigators discovered the hocked ring was one of the stolen items.

The State charged Bendickson with theft in the first degree and burglary in the third degree. Both felony charges carried habitual-offender penalties.

On September 28, 2017, Bendickson pleaded guilty to the charged offenses. In return, the State dismissed the habitual offender enhancements.[1] But

---

[1] At the plea hearing, defense counsel stated as part of the plea agreement his client also "agreed to also dismiss a postconviction relief action."

a few days later, on October 5, Bendickson sent a handwritten letter to Judge Drew, alleging a "serious problem" with his guilty pleas and asserting he was having "a hard time" with his plea deal. Five days later, Bendickson sent a handwritten motion to Judge Weiland alleging he was not receiving legal papers from his attorneys and asking to subpoena all evidence in his case. The district court held a hearing on October 17. At that hearing, Bendickson claimed "unethical things" were going on with his attorneys and professed he did not "want to plead to the felonies." He told the court:

> I'm not wanting to really take this. He tells me they got still shots of me and the codefendant walked up and knocked on the door. I knew right away it was a lie because I was never there.

Bendickson told the court he intended to move to withdraw his guilty plea, but had not done so yet. The court declined to appoint new counsel.

On October 19, Bendickson—through counsel—moved to withdraw his guilty pleas. The motion began: "The Defendant believes that the following information is sufficient to demonstrate his innocence in this case and further justifies him withdrawing his guilty plea." It then listed six different points attacking the State's evidence. The motion alleged "some of the above evidentiary items the defendant was aware of prior to his entering his guilty plea and some of them he was not." It also explained "after learning of some of the above items," Bendickson "was unclear as to the procedure to be used" to undo his pleas. The State resisted Bendickson's motion to withdraw his pleas. The resistance addressed the sufficiency of the State's evidence, but emphasized the guilty plea was knowing and voluntary.

Before considering Bendickson's motion to withdraw his guilty pleas, the district court allowed attorney F. David Eastman to stop representing Bendickson based on an alleged conflict of interest. The court appointed attorney Barbara Westphal as new counsel.

At the November 13 hearing, attorney Westphal asked the court to treat Bendickson's "motion to withdraw a guilty plea" as a motion in arrest of judgment and asserted her client's plea "was not voluntary and intelligently entered."[2] Bendickson testified he did not commit burglary or theft. Bendickson asked to withdraw his pleas because his prior attorney misled him into believing a video existed showing him committing a crime. The defense also offered a handwritten letter from Josh Bendickson, Jason's cousin, who took responsibility for the crimes. The defense alleged Josh could not attend the hearing because he was in prison. Jason Bendickson also questioned Ewing's credibility as an expected witness for the State.

In a December 18 ruling, the district court engaged in the following analysis:

> When a defendant pleads guilty, the plea should be voluntary, knowing, and intelligent with an awareness of all the relevant circumstances and consequences. *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011). Part of the question of whether a plea is knowing and voluntary depends upon proper advice by competent counsel.

The district court then reiterated the test for counsel's performance in guilty plea proceedings, before concluding:

> In this case, there is no credible evidence in the file that Attorney Eastman provided ineffective assistance before or after the plea change. The defendant received a plea agreement that resulted in a more favorable disposition to him. Based upon the offer made by

---

[2] Despite this nuanced request by counsel, the district court entitled its order: "Ruling on Motion to Withdraw Guilty Plea."

the State, Mr. Bendickson elected to enter a guilty plea prior to going to trial. In his filings and on the record, Mr. Bendickson is raising what he perceives to be weaknesses in the State's evidence.

Attorney Eastman's motion recites that the defendant was aware of some of those weaknesses at the time of the plea change hearing and was not aware of others.

The district court characterized Bendickson's complaints as "a classic example" of "getting cold feet" after deciding to accept a plea offer. The court reasoned: "This is not enough to set aside a plea of guilty. The defendant is not raising a procedural issue or problem concerning the guilty plea." The court contrasted such intrinsic matters with Bendickson's extrinsic attacks: "His issues revolve around potential ineffective assistance of counsel and sufficiency of the evidence." Ultimately, the court did not find "sufficient evidence that the defendant's plea was not knowing, voluntary, or intelligent."

On December 12, Bendickson sent Judge Rosenbladt a handwritten letter asserting Ewing was lying and attached letters from Ewing he believed supported his claims. The court took no action on Bendickson's letter. At his January 30, 2018 sentencing hearing, Bendickson received concurrent indeterminate terms of five and ten years.

Three months later, on March 23, the supreme court issued its opinion in *Schmidt*, disavowing language in *Utter*[3]—the case cited by the district court in

---

[3] *Schmidt* did not expressly state it was overruling *Utter*, though Westlaw has assigned a red flag to the earlier case. Rather, *Schmidt* overruled "cases holding that defendants may only attack the intrinsic nature—the voluntary and intelligent character—of their pleas." 909 N.W.2d at 781. *Utter* held the defendant could "intrinsically challenge the voluntary and intelligent nature" of her plea by proving counsel's advice was not within the normal range of competence. 803 N.W.2d at 651. It would be accurate to say *Schmidt* carved out a new, actual-innocence exception to the prohibition on extrinsic challenges to guilty pleas discussed in *Utter*. *See Schmidt*, 909 N.W.2d at 795.

denying Bendickson's motion to withdraw his plea. *See Schmidt*, 909 N.W.2d at 790 ("[W]e overrule our cases that do not allow defendants to attack their pleas based on extrinsic grounds when they claim actual innocence."). Bendickson filed an appeal from judgment and sentence, but asks only for a "limited remand so that [he] may have a hearing on his claim of actual innocence."

## II. Scope and Standards of Review

The parties disagree on the proper standard of review. Bendickson argues we should review his remand request for correction of legal error. The State contends we review the district court's denial of a motion to withdraw a guilty plea under Iowa Rule of Criminal Procedure 2.8(2)(a) for an abuse of discretion, citing *State v. Mattly*, 513 N.W.2d 739, 741 (Iowa 1994).[4]

At this point, Bendickson presses a general challenge to his guilty pleas, so we review for the correction of errors at law. Iowa Rule App. P. 6.907; *State v. Ortiz*, 789 N.W.2d 761, 764 (Iowa 2010); *cf. State v. Reeves*, 636 N.W.2d 22, 26 (Iowa 2001) ("While the district court's weighing of the evidence is entitled to deference, its view of the law is not.").

## III. Analysis

This appeal poses a single question: Does *Schmidt* authorize a freestanding actual-innocence hearing in an ongoing criminal case when a defendant pleaded guilty but timely sought to withdraw that plea, alleging factual innocence of the crime? Bendickson says yes. The State says no.

---

[4] Independently, we note *Schmidt* grounded the right to a free-standing claim of actual innocence in the Iowa Constitution. 909 N.W.2d at 795. Given that grounding, we would review the merits of an actual-innocence finding de novo. *Cf. Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016) (reviewing de novo claims under article I, section 10).

We start with Bendickson's position. Soon after pleading guilty to theft and burglary, Bendickson reversed course and tried to present evidence he believed would show his innocence. But, according to Bendickson, the district court did not entertain his extrinsic claim of actual innocence. Citing *Utter*, 803 N.W.2d at 651, the district court limited Bendickson's attack to the voluntary and intelligent nature of the guilty pleas and the performance of plea counsel. Finding the pleas satisfied Iowa Rule of Criminal Procedure 2.8(2)(b) and counsel performed competently, the district court denied Bendickson's motion to withdraw his guilty pleas. The case proceeded to sentencing.

On appeal, Bendickson asserts *Schmidt* changed the legal landscape. In *Schmidt*, the majority recognized a new exception to the principle that guilty pleas waive all defenses and objections not intrinsic to those pleas. *See Schmidt*, 909 N.W.2d at 789–90. Now "convicted defendants can attack their pleas when claiming actual innocence even if the attack is extrinsic to the pleas." *Id.* (overruling cases to the contrary). *Schmidt* created a new standard and remanded the case to the district court to apply that standard. *Id.* at 799–800.

While *Schmidt* approved a "freestanding claim of actual innocence" in the context of a postconviction relief action, it emphasized Iowa Code sections 822.2(1)(a) and (d) (2014) were not the exclusive vehicles for bringing such claims. *Id.* at 798. Bendickson submits a remand for a new hearing on his motion to withdraw his guilty pleas qualifies as another available mechanism for raising a freestanding actual-innocence claim.

The State calls Bendickson's proposal "procedurally irregular." It claims the district court already considered Bendickson's actual-innocence claim and that

"such claims have always been available" as a reason to withdraw a guilty plea. The State argues *Schmidt* is "inapposite" because it held "the statute of limitations in Iowa Code section 822.3 will not bar an actual innocence claim based on newly discovered evidence, notwithstanding an otherwise valid guilty plea." *See* 909 N.W.2d at 799. The State points out: "Bendickson faced no such bar. His claim was timely. The district court addressed it and found it wanting."

In support of this argument, the State cites several cases interpreting the rule of criminal procedure permitting defendants to withdraw their guilty pleas "at any time before judgment." *See* Iowa R. Crim. P. 2.8(2)(a); *Mattly*, 513 N.W.2d at 741 (declining to adopt four-factor test[5] for withdrawal motions from *United States v. Abdullah*, 947 F.2d 306, 311 (8th Cir.1991), though observing the test to be "entirely adequate"); *State v. Ramirez*, 400 N.W.2d 586, 589 (Iowa 1987) (explaining appellate courts will uphold refusal to permit withdrawal of guilty plea where plea was knowing, voluntary and intelligent); *State v. Weckman*, 180 N.W.2d 434, 436 (Iowa 1970) (reiterating that procedural rule (then codified at Iowa Code section 711.3) did not give a defendant an absolute right to withdraw a guilty plea, but instead conferred discretion on the district court to permit withdrawal).

The State acknowledges *Schmidt* anticipated vehicles for actual-innocence claims other than postconviction relief. But the State argues: "The problem for Bendickson is that he secured consideration of his innocence claim under a rule that permits a looser standard and it failed."

---

[5] The four factors are "(1) whether defendant established a fair and just reason to withdraw the plea; (2) whether defendant asserts legal innocence of the charge; (3) length of time between the plea and motion to withdraw; (4) whether the government will be prejudiced." *Mattly*, 513 N.W.2d at 741.

Unlike the State, we do not read the district court record as providing Bendickson with full consideration of his actual-innocence claim. The parties and court were, understandably, operating in pre-*Schmidt* mode.

At the hearing on Bendickson's motion to withdraw his guilty pleas, attorney Westphal asked the court to treat his earlier filing as a motion in arrest of judgment because his pleas were "not voluntary and intelligently entered." Westphal called her client to testify about his reasons for wanting to withdraw his guilty pleas. But she couched his complaints as intrinsic to the pleas. She asked if based on his assertions about the State's evidence "he was able to enter a voluntary and intelligent guilty plea." He simply responded, "No." Without the benefit of *Schmidt*, Bendickson did not have a "full and fair opportunity" to present all evidence in support of his factual innocence. *See Schmidt*, 909 N.W.2d at 801 (Cady, C.J., specially concurring).

Likewise, the district court framed its analysis around the existing assumptions in *Utter*: "When a defendant pleads guilty, the plea should be voluntary, knowing, and intelligent with an awareness of all the relevant circumstances and consequences." *See* 803 N.W.2d at 651. The court found Bendickson's reasons for wanting to withdraw his guilty pleas were unavailing, in part, because they challenged the "sufficiency of the evidence." In reaching its conclusion, the court answered only the intrinsic challenge—stating: "The [c]ourt does not find sufficient evidence that the defendant's plea was not knowing, voluntary, or intelligent. It appears to have been a strategic decision which did result in a benefit in the form of reduced charges and less prison time."

Before *Schmidt*, a district court had discretion to deny withdrawal of a guilty plea if the defendant knowingly, voluntarily, and intelligently entered that plea—even when the defendant protested his innocence. *See Ramirez*, 400 N.W.2d at 588. After *Schmidt*, despite a plea colloquy free of constitutional defects, a defendant may bring a freestanding claim of actual innocence "even if the attack is extrinsic to the pleas." 909 N.W.2d at 789 (majority opinion). Such a claim succeeds if the defendant shows by clear-and-convincing evidence no reasonable fact finder could convict on the crimes charged. *See id.* at 797. Bendickson seeks a new hearing in the district court to make that showing.

We find support in *Schmidt* for Bendickson's request. As Chief Justice Cady wrote: "Innocent people should always have a forum to prove their innocence." *Id.* at 800 (Cady, C.J., specially concurring). Not even the State would outright deny Bendickson that forum. The State only opposes a remand, instead asserting "Bendickson may pursue his claims in postconviction-relief action or any other procedurally regular setting." After considering the parties' arguments, we see no reason to postpone a hearing on Bendickson's freestanding claim of actual innocence until postconviction proceedings. The *Schmidt* majority emphasized the fundamental unfairness of incarcerating the guiltless: "An innocent person has a constitutional liberty interest in remaining free from undeserved punishment. Holding a person who has committed no crime in prison strikes the very essence of the constitutional guarantee of substantive due process." *Id.* at 793 (majority opinion). Even the dissent recognized value in timely resolving actual-innocence claims: "From the State's perspective, I am guessing it would have simply preferred to try Schmidt all those years ago." *Id.* at 824 (Mansfield, J., dissenting).

Bendickson preserved his claim in the district court by timely raising an actual-innocence challenge to his guilty plea.[6]   The district court denied Bendickson's motion based on the then-controlling intrinsic-evidence-only precept in *Utter*.  In *Schmidt*, our supreme court created an actual-innocence exception to the *Utter* prohibition on extrinsic challenges to guilty pleas.  Bendickson now proposes we order a limited remand so the district court can hold a hearing as described in *Schmidt.*  We find a remand is an appropriate remedy but do not retain jurisdiction.  We conditionally affirm the judgment and sentences.  *See State v. Nitcher*, 720 N.W.2d 547, 560 (Iowa 2006) (affirming convictions but remanding case to the district court to rule on motion for new trial under the correct weight-of-the-evidence standard); *see also State v. Plain*, 898 N.W.2d 801, 829 (Iowa 2017) (conditionally affirming conviction and remanding for development of the record on his Sixth Amendment challenge).  In so finding, we make no comment on the merits of Bendickson's actual-innocence claim.  *See Schmidt*, 909 N.W.2d at 800 (majority opinion).  We vacate the district court's order denying Bendickson's motion to withdraw his pleas and remand for a new hearing solely on that issue.

On remand, the district court should allow the parties to supplement the record and present evidence about the claim of actual innocence, if the parties desire to do so.  *See id.*  At the hearing, Bendickson bears the burden to prove, by

---

[6] This fact separates this case from *State v. Shultsev*, No. 17-1766, also decided today. We reach different outcomes in these two appeals, in part, because Bendickson preserved error and Shultsev did not.  *Schmidt* did nothing to negate the fundamental requirement of error preservation.  Schmidt raised his actual-innocence claim before the PCR court, just as Bendickson raised his claim in post-plea motions.  *Id.* at 783.  Shultsev's challenge to his plea was untimely and, therefore, not preserved for our review.  No. 17-1766, at *5–6*; see* Iowa R. Crim. P. 2.8(2)(d), 2.24(3)(a) (barring appellate challenges to guilty pleas when defendant fails to file a proper motion in arrest of judgment).

clear and convincing evidence, despite the record supporting his guilty pleas, no reasonable fact finder could convict him of first-degree theft and third-degree burglary in light of all the evidence, including any facts discovered since entering his guilty pleas.  *See id.* at 797.

If on remand the district court determines Bendickson has met his burden, the court must allow him to withdraw his guilty pleas and the case may go to trial. If the district court determines he has not satisfied his burden, the judgment and sentences will stand affirmed.

**CONDITIONALLY AFFIRMED AND REMANDED WITH DIRECTIONS.**