# IN THE COURT OF APPEALS OF IOWA

No. 24-1364
Filed August 6, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KYLE LOU RICKE,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Kossuth County, Nancy L. Whittenburg, Judge.


        A defendant appeals his conviction for murder in the first degree. **AFFIRMED.**


        Pamela Wingert of Wingert Law Office, Spirit Lake, for appellant.

        Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney General, for appellee.


        Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

A jury convicted Kyle Ricke of first-degree murder for shooting Officer Kevin Cram of the Algona Police Department eight times, resulting in his death. Ricke appeals, contending that the State failed to prove he acted with deliberation and premeditation. He asks that we vacate his conviction. Finding substantial evidence showing Ricke's conduct was deliberate and premeditated, we affirm.

## I. Facts and Prior Proceedings

"We need an ambulance. An officer is down. My son shot him." This was the 911 call from a panicked Irene Ricke after watching her son, Kyle, shoot Officer Cram from just three feet away. Kyle Ricke was experiencing legal trouble—and had been for several years—stemming from strained relationships with the mothers of his two children. On a September morning in 2023, Ricke had been in court to address a harassment charge against him from one of these relationships. While the court continued that matter for a later day, Ricke expressed to both his father and his sister that he didn't want to go back to jail.

After returning home—where he lived with his mother—Ricke began operating a skid loader to clear a walking path on the property. Irene had just arrived when Officer Cram pulled up to the residence behind her. Ricke watched his mother and Officer Cram walk to where he was working. After Ricke dismounted the skid loader, Officer Cram told him there was a warrant for his arrest from another police department for another charge of harassment. Ricke asked to put the skid loader away, which Officer Cram permitted.

Ricke parked the skid loader near the garage. A moment later, Ricke emerged from the garage and approached Officer Cram and his mother as they

walked back toward the driveway. Ricke pulled out a handgun and shot Officer Cram eight times. The bullets came in three waves—an opening blast of five shots at shoulder height in quick succession, a momentary pause, two more shots at a forty-five-degree angle after Officer Cram had collapsed to the ground, and one final shot directly over the officer. After that last shot, Ricke crouched over Officer Cram and said, "too late motherfucker." Irene was just three feet away.

In the moments after the shooting, Ricke raised the gun to his own head. But ultimately, Ricke chose to flee the scene in his truck, before quickly returning to the residence. While running back to his truck, Ricke paused to hug his distraught mother. Irene cried, "You killed that man," to which her son responded, "Yeah I did, because I'm fucking tired of this shit." Then Ricke left in his truck again.

Ricke fled to his sister's residence in Minnesota, where he later surrendered to local police. The State charged Ricke with first-degree murder, a class "A" felony, in violation of Iowa Code sections 707.1 and 707.2 (2023). He pleaded not guilty. The case went to jury trial in July 2024.

At trial, the State presented Irene's 911 call, Officer Cram's dashcam and bodycam footage, photos of the Ricke residence, a diagram of the crime scene, photos of the weapon used, and photos of Officer Cram's injuries. The State also presented testimony from Irene, Ricke's sister, the dispatcher who received the 911 call, responding officers, investigating officers, crime scene specialists, and a firearm specialist. The medical examiner who performed the autopsy also testified in detail about Officer Cram's gunshot wounds—three to the head, four to the torso, and one to the left hand.

The jury convicted Ricke of first-degree murder. The district court sentenced him to life in prison without the possibility of parole. Ricke appeals.

## II. Scope and Standard of Review

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Schooley*, 13 N.W.3d 608, 614 (Iowa 2024). We are bound by the jury's verdict if it is supported by substantial evidence "sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Mathis*, 971 N.W.2d 514, 516–17 (Iowa 2022)). "[W]e view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Mathis*, 971 N.W.2d at 517 (citation omitted).

## III. Analysis

Ricke argues that the State's evidence was insufficient to prove beyond a reasonable doubt that he committed first-degree murder. The State had to prove:

> 1. On or about the 13th day of September, 2023, [Ricke] shot Kevin Cram.
> 2. Kevin Cram died as a result of being shot.
> 3. [Ricke] acted with malice aforethought.
> 4. [Ricke] acted willfully, deliberately, premeditatedly, and with a specific intent to kill Kevin Cram.

Ricke focuses on the fourth element, alleging that the record lacked proof of deliberation and premeditation. The jury received definitions for both of those concepts. The court instructed the jury that "to deliberate" means "to weigh in one's mind, to consider, to contemplate, or to reflect." The court also instructed the jury that "premediate" means "to think or ponder upon a matter before acting." Additional jury instructions stated, "[d]eliberation and premeditation need not exist

for any particular length of time before the act." And "[i]f a person has the opportunity to deliberate and uses a dangerous weapon against another resulting in death, you may, but are not required to infer that the weapon was used with malice, premeditation, and specific intent." Finally, "a gun, by law, is a dangerous weapon."

Beyond instructing on premeditation and deliberation, the court advised the jury that Ricke used a dangerous weapon in the killing of Officer Cram. And, if the jurors concluded that Ricke had the opportunity to deliberate, they were free to infer that he acted premeditatedly.[1] Ricke argues that he did not have an opportunity to deliberate, relying on his mother's testimony that "it was over so fast" and she thought her son "had lost his mind" and "snapped."

To counter, the State argues that Ricke had the opportunity to deliberate before he started shooting—either from when he first saw Officer Cram approaching with his mother, or in the ninety seconds after he learned Officer Cram was there to serve an arrest warrant. The State also argues that Ricke had the chance to think before each of the eight times he pulled the trigger. Indeed, we have held that when a firearm requires the shooter to pull the trigger with each shot—as was the case here—the jury could determine the shooter "pondered or

---

[1] On appeal, Ricke argues that killing with a dangerous weapon permits inferences of malice and intent to kill, but not deliberation or premeditation. But Ricke did not object to the jury instruction allowing this inference to be made. So the instruction became the law of the case. *See Mathis*, 971 N.W.2d at 518. And even if he had objected, the instruction is a correct statement of the law, and the inference is permitted. *See State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001) ("[T]he use of a deadly weapon supports an inference of malice, and when accompanied by an opportunity to deliberate, also supports an inference of deliberation and premeditation.").

thought about his conduct before each pull of the trigger." *State v. Thomas*, No. 19-0379, 2020 WL 5651563, at *4 (Iowa Ct. App. Sept. 23, 2020).

We find substantial evidence that Ricke had the opportunity to deliberate before he shot Officer Cram the first time and again before he fired the second, third, fourth, fifth, sixth, seventh, and eighth shots. Thus, the jury could reasonably infer that Ricke used the gun to shoot and kill Officer Cram with premeditation.

Even if the permissive inference from the use of a dangerous weapon was insufficient, the State can prove premeditation by "evidence of (1) activity by the defendant to plan the killing, (2) motive based on the relationship between the defendant and the victim, or (3) the nature of the killing, including the use of a deadly weapon combined with an opportunity to deliberate." *State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003).

Ricke contends there was no evidence that he planned the killing. But the record belies that contention. Law enforcement surmised that Ricke did not have the gun while operating the skid loader. He didn't have a gun holster. His pants were loose, and he was not wearing a belt or underwear. So, the jurors could infer that Ricke obtained the gun after parking the skid loader near the garage. And from there, a reasonable jury could conclude that Ricke planned the killing by asking Officer Cram if he could put the skid loader away—and using that opportunity to retrieve the weapon. What's more, the gun Ricke used required the shooter to insert a magazine and pull the slide back to move a cartridge into the chamber. The gun also had a safety mechanism the shooter had to turn off before firing. And the shooter had to pull the trigger to fire each shot. From the totality of the evidence, a reasonable jury could conclude that Ricke planned the killing by

obtaining the gun, inserting a magazine, pulling the slide back, turning off the safety, and pulling the trigger repeatedly. *See People v. Sheppard*, No. E039470, 2007 WL 431971, at *6–7 (Cal. Ct. App. Feb. 9, 2007) (finding sufficient evidence of premeditation and deliberation, relying in part on defendant having to retrieve gun, obtain magazine clip, "slide the clip into the handle," and "rack the gun").

Ricke also argues there was no motive because the State presented no evidence of animosity between him and Officer Cram before the shooting. Again, the record undermines his argument. Ricke made clear—by stating two days before and again on the day of the shooting—that he did not want to go back to jail. Perhaps most persuasive were Ricke's own words, "too late motherfucker," that Officer Cram's body camera captured while Ricke crouched over his body. Or Ricke's admission of killing Officer Cram, "because I'm fucking tired of this shit." A reasonable jury could conclude that once Ricke learned Officer Cram was there to serve an arrest warrant, he formed the motive to kill him to avoid going back to jail. And while motive is not an element of first-degree murder, evidence of motive is relevant to proving premeditation and deliberation, which are elements that must be proven. *See State v. Gordon*, 354 N.W.2d 783, 784 (Iowa 1984) ("Deliberation and premeditation may be shown by evidence of motive.").

Finally, Ricke argues the shooting was "over very quickly" and there was no time to premeditate. But our law "does not require any minimum amount of time to premeditate." *Buenaventura*, 660 N.W.2d at 49. Officer Cram's dash camera footage captured his own death. The jury saw that video. At close range, Ricke fired an initial blast of five shots at shoulder height as he walked towards Officer Cram. Ricke then briefly paused while Officer Cram collapsed, stepped closer,

and fired two more shots at Officer Cram on the ground. Ricke's final shot was straight down, directly over the officer. A reasonable jury could rely on the violent nature of the killing to find premeditation.

Considered in the light most favorable to the State, we find substantial evidence that Ricke acted deliberately and with premeditation. We affirm Ricke's conviction.

**AFFIRMED.**